(No. 36789.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM STACEY, Plaintiff in Error.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty, of counsel,) for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and John T. Gallagher and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

This case is before us on a writ of error to review a judgment of the criminal court of Cook County entered upon a jury verdict finding the defendant, William Stacey, guilty of murder and fixing his punishment at 299 years imprisonment.

The defendant was convicted of the murder of one

Darlyne Todd who was found stabbed to death in her apartment at about 4:00 in the afternoon. When the police arrived on the scene they found a card from a photographic studio saying that her photographer would be there at 10:30 that morning and investigation revealed that the defendant was the photographer who was to have called on the deceased. The defendant was arrested at about 9:00 P.M. the same day and after some questioning by the police he signed a confession admitting that he had killed Mrs. Todd. In the confession the defendant said that he had gone to Mrs. Todd's apartment to photograph her baby. He said that after he had finished taking pictures of the baby and had started putting his equipment away, he hit Mrs. Todd with a piece of sawed off baseball bat which he carried in his camera case to keep the equipment from rattling around. He said that he hit her a couple of times and then went into the kitchen and got a knife and stabbed her. When he was asked why he struck and stabbed Mrs. Todd, he said that her housecoat kept opening up so that she kept showing herself and he got the urge to hit her. A blood-stained shirt belonging to the defendant was obtained from his apartment and was introduced in evidence against him. The defendant testified at the trial and admitted striking and stabbing the deceased. He contended, however, that she had asked him to go to bed with her and when he refused she had struck him and that he had acted in self-defense. He testified that he remembered hitting her with the bat but did not remember stabbing her and only remembered attempting to remove the knife from her body.

The defendant's first contention is that the court erred in admitting the confession in evidence. The evidence at the preliminary hearing on defendant's motion to suppress the confession disclosed that the defendant was arrested without a warrant at 9:00 P.M. at his home and was taken to the Albany Park Police Station where he remained about 45 minutes. While he was there he was asked a few ques-

tions concerning the death of Mrs. Darlyne Todd and was then taken back to his home in police custody to pick up some photography equipment which the defendant used in connection with his employment. They then went to the photographer's studio where certain pictures were developed, including the pictures the defendant had taken of Mrs. Todd's baby. They stayed at the studio about an hour and a half and then went back to the police station where he was questioned by several police officers about Mrs. Todd's death. At about 2:00 A.M. the officers noticed some scratches on the defendant's arm and told the defendant to undress. He took off all his clothes and while he was undressed the officers continued to question him. The defendant became angry and one of the officers told him that the police were becoming angry too. According to the defendant this officer "made a move for him" but was restrained by another officer. Defendant was then given back his T-shirt and trousers and the questioning continued. The defendant testified at the hearing that he had asked repeatedly if he could call his wife and asked once if he could call his father-in-law and the officers kept saying, "Wait a little while." At about 2:30 A.M. the defendant confessed to the murder of Darlyne Todd. The State did not introduce any evidence at the hearing to suppress the confession.

The defendant's contention is that the trial court should have refused to admit the confession into evidence because the confession was obtained during a period of illegal detention. The defendant contends that he should have been taken immediately before a magistrate and that, under the doctrine of *Mallory* v. *United States,* 354 U.S. 449, 1 L. ed. 2d 1479, and *McNabb* v. *United States,* 318 U.S. 332, 87 L. ed. 819, a confession obtained while defendant was in police custody in violation of the statute requiring an appearance before a magistrate, is inadmissible. This is not the first occasion on which we have been asked to adopt the *McNabb* doctrine. In the recent case of *People* v. *Jackson,*

23 Ill.2d 274, we pointed out that the *McNabb* rule was only
a rule of evidence for criminal trials in Federal courts and
did not arise from constitutional sources. In the *Jackson*
case, the defendant had been arrested at about 10:30 A.M.
and was held in police custody while he was questioned by
several officers. He made an oral admission at about 3:00
P.M. and signed a confession at about 6:30 P.M. He was
not taken before a magistrate until 2 days later. We held
there that the record did not support the defendant's con-
tention that there was an unreasonable and illegal delay in
taking the defendant before a magistrate, and therefore held
that there was no need to consider whether we should adopt
the *McNabb* rule, which we referred to as "arbitrary and
rigid." In the present case a period of only 5½ hours elapsed
between defendant's arrest and his confession. According
to the defendant's own testimony he was asked only a few
questions immediately following his arrest and during the
next hour and a half he was at his home or the studio, and
was not subjected to interrogation during that period. We
are of the opinion that the evidence here, as in *Jackson,* does
not disclose any unreasonable delay in taking the defendant
before a magistrate.

The defendant also argues that even if the *McNabb* rule
is not adopted, the confession was inadmissible since it is
contended that the confession was the product of psycho-
logical coercion and threats of physical violence. The de-
fendant also urges that the confession should not have been
admitted because the State did not produce any of the wit-
nesses who were present at the time the confession was
made. Defendant argues that the persistent questioning
from 11:30 P.M. until 2:30 A.M., together with the fact
that the defendant was forced to disrobe, established that
the police used psychological coercion to induce the confes-
sion. We are of the opinion that the evidence in the record
does not support this contention. Once the pictures of the
Todd baby had been developed the police knew that the de-

fendant had been in the Todd apartment on the day Mrs. Todd was killed and it was both reasonable and proper to question defendant about his presence there. According to the defendant the police kept asking him over and over about what had happened in the apartment. There is nothing in this type of interrogation to suggest any "psychological coercion." Defendant was forced to undress, not so as to humiliate him as in *Malinski* v. *New York,* 324 U.S. 401, 89 L. ed. 1029, but so as to examine his body for any other signs of a struggle between him and the deceased. He remained undressed for only a period of 10 or 15 minutes. Defendant testified at the hearing that he became angry at the police questioning and there is nothing in the record which tends to indicate that he was frightened or that the police questioning overcame his will. There was no testimony at the hearing as to any threats of physical violence except defendant's testimony that one of the officers "made a move toward him" but was restrained by another officer. The testimony of the defendant, even if believed in its entirety, was insufficient to establish that the confession was the product of psychological coercion or threats of violence. Under these circumstances, it was not necessary for the State to introduce any evidence to rebut the defendant's testimony. We therefore hold that the court did not err in admitting the confession into evidence.

The defendant's next contention is that the trial court erred in admitting the blood-stained shirt into evidence. The evidence on the motion to suppress this evidence showed that the police noticed a spot of blood on the defendant's T-shirt although there was no blood on his outer shirt. The officer accused the defendant of getting the blood on his shirt when he murdered Mrs. Todd and defendant denied it. The officer then said that he was going to send someone over to the defendant's house and prove that he was lying. The defendant said "Go ahead," and an officer was then sent to the defendant's house to search for another shirt. This

officer testified that he went to the defendant's apartment and talked to the defendant's wife. He had no warrant authorizing a search of the apartment. He asked Mrs. Stacey what kind of a shirt the defendant had worn when he left the house in the morning. Mrs. Stacey told the officer that the defendant had worn a pink shirt and the officer told her that he had a yellow shirt on at the time he was arrested. She then told the officer that the defendant had come home and changed shirts during the day. The officer then asked her to produce the shirt and she asked him whether her husband had told the officer to come and get it. The officer replied that the defendant had told him to do so and she then gave the officer a pink blood-stained shirt. Mrs. Stacey testified at the hearing to suppress the evidence that before the officer arrived she had talked to her father about the shirt. Her father had seen the blood on the shirt and had advised her not to have the shirt washed because the police might want it for evidence. This evidence clearly shows that the bloody shirt was not seized in an unlawful search. Even if the defendant's remark "Go ahead" cannot be construed as a consent for the officers to obtain the shirt, it is quite clear that Mrs. Stacey deliberately saved the shirt for evidence and that she voluntarily surrendered it to the police. Her consent was sufficient. *People* v. *Speice*, 23 Ill.2d 40.

The defendant further contends that the court erred in admitting evidence of a lie-detector test. The record shows that the defendant was asked on cross-examination whether he had ever told anybody that he had lied when he said he had no sex motive for the crime. The defendant replied, "I seem to remember at the lie detector test . . ." Defendant's counsel objected but the court overruled the objection and the defendant then replied, "I believe I might have said it then." The prosecutor asked, "When did you say it?" and and the defendant's counsel then said "Objection, unless they lay the foundation." Upon the objection being over-

ruled, the defendant then replied that if he had made any such remark, he had made it at the lie-detector test but that he did not remember what he had said on that occasion. In rebuttal, a police officer testified that he was present in the lie-detector room of the Chicago Crime Laboratory, and that he heard the defendant say that he had an urge to have intercourse with Darlyne Todd but that after he had struck her he lost the urge.

The first reference to a lie-detector test was made by the defendant himself in response to a proper question as to whether the defendant had made any prior inconsistent statement. There was nothing in the prosecutor's question which required the defendant to refer to a lie-detector test, and since the defendant volunteered the information that he might have made such a statement at the lie-detector test he is not now in a position to claim that reference thereto was prejudicial. Furthermore, defendant's counsel objected to the line of questioning pursued by the prosecutor unless a foundation was laid, which required the prosecutor to show the time and place of the alleged inconsistent statement. The results of the lie-detector test were not brought out. We find no prejudicial error in the admission of evidence that the defendant made certain statements during the course of a lie-detector test.

The defendant complains that the trial court permitted the prosecutor to ask leading questions of a certain witness on rebuttal. These questions dealt with whether the defendant had made the prior statement as to a sex motive and in order to impeach the defendant it was proper for the prosecutor to ask this witness whether the defendant had made such a statement. Such questions, although leading, were proper under the circumstances and the trial court did not err in overruling objections to the questions.

Defendant also contends that the prosecutor made prejudicial statements in the presence of the jury. The record shows that during the course of the defendant's cross-

examination of a State's witness, the prosecutor said, "Judge, in fairness to the defendant, I think I should let counsel know some of the answers made might prejudice the defendant to a fair trial." Defendant's counsel made a motion that this remark be stricken and also moved for a mistrial. The court sustained the motion to strike but denied the motion for a mistrial and a further discussion was held in chambers where the prosecutor stated to the court that the objection was made in all sincerity. He stated that the witness who was under cross-examination was in the habit of volunteering information and that he was afraid that the witness might volunteer the information that the defendant was being questioned about other killings in Chicago. The prosecutor stated that he was also afraid that the witness might volunteer the information that the police had found certain pictures in the defendant's apartment indicating sexual perversion on defendant's part. The court stated that he thought it was a "real lawyer-like thing" for the prosecutor to do but that if defendant's counsel wanted to proceed with the cross-examination the court would not stop him. There is nothing in the record to indicate that the prosecutor had any improper motive in warning the court and defense counsel of the witness's propensity for volunteering information. While it would have been better for the prosecution to have given this warning outside the presence of the jury, we are of the opinion that in view of the fact that the court struck the prosecutor's remark, and no details of the alleged prejudice were brought out before the jury, there was no prejudicial error.

The defendant also argues that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Defendant admitted killing the deceased and the only argument is that the evidence failed to show premeditation. In the defendant's own statement he admitted that he wanted to hit the deceased, that he did hit her several times, and that he went into the kitchen, obtained a knife and stabbed her.

This was sufficient to show that the killing was the result of a deliberate act of the defendant and was sufficient to establish the elements of premeditation and malice. It is true that defendant testified at the trial that he killed in self-defense, but the jury was not bound to believe this testimony. We hold that the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant also argues that the court did not properly instruct the jury. First, it is argued that the court should have given an instruction on the law of self-defense. The defendant tendered only one instruction on this subject, which was refused by the trial court. This instruction was faulty in that it assumed that the defense of self-defense had been established and instructed the jury that if the defense of self-defense, together with other evidence, created a reasonable doubt in the minds of the jurors, it should return a verdict of acquittal. Furthermore, there was nothing in this instruction defining the term of self-defense and no other instruction defined the term. An instruction purporting to state the law upon self-defense should not be given without defining the term. *People* v. *Doody*, 343 Ill. 194, 215.

The defendant also urges that the trial court erred in refusing the defendant's instruction on the law of voluntary manslaughter. The defendant testified that the deceased had hit him once with her hand and twice with the bat handle and that he had grabbed the bat from her and after that he did not remember what had happened. He did not remember stabbing the deceased, and the first thing he remembered after she had attacked him was that he was trying to pull the knife out of her. It is apparent that the defendant's theory at the trial was that he either acted in self-defense or that he killed the deceased in a moment of temporary insanity. Neither of these theories is consistent with the theory that the defendant was guilty of voluntary man-

slaughter. We are of the opinion that the trial court did not err in refusing to give the manslaughter instruction or to submit a form of verdict on manslaughter.

The defendant also objects to the failure of the trial court to give two of defendant's instructions concerning the defendant's confession. One of these instructions told the jury that in order for them to consider the confession the jury must find that it was made freely and voluntarily and told the jury that if they found from the evidence that any force or violence was used or any promises of immunity were made they might totally disregard the confession. This amounted to telling the jury that they had the right to determine whether the confession was voluntary. Under the law, it is the function of the trial judge to determine that question, and the jury can determine only the weight to be given to a confession once the trial court has ruled that it is admissible. The court properly refused to give this instruction. (*People* v. *Guido,* 321 Ill. 397.) The other instruction which the court refused to give told the jury that they could consider whether any threats were made, or any force or violence used against the defendant, or whether any promises of immunity or benefits were promised to the defendant. There was no testimony in the record that any promises of immunity or benefits were made to the defendant and the trial court properly refused to give this instruction.

Finally, it is argued that the verdict of 299 years was excessive as a matter of law, or, in the alternative, that the verdict was the product of passion and prejudice and was the result of newspaper publicity. The defendant admits that the law is uniformly against him on his argument that the verdict is excessive. The legislature has authorized a penalty of any number of years and we have heretofore upheld sentences of 199 years as being sanctioned by the legislature. (*People* v. *Grant,* 385 Ill. 61.) The verdict here

was likewise authorized by statute and defendant's contention that it was excessive as a matter of law cannot be sustained. In support of his argument that the verdict was the result of passion, prejudice and adverse newspaper publicity, the defendant argues that newspaper publicity regarding the parole of Nathan Leopold induced the jurors here to return an excessive verdict in order to insure that the defendant could never be paroled. However, the only matter in the record as to this contention is a newspaper article which was attached to the defendant's motion for a new trial, in which certain jurors in the present case were quoted as saying that they imposed the 299-year sentence because they had read that Leopold had been paroled after being sentenced to a term of life plus 99 years. This newspaper article was pure hearsay and was entirely insufficient evidence upon which to contend that the jurors were improperly influenced. It has always been held that the verdict of jurors cannot be impeached even by their own affidavit or testimony. (*People* v. *Pulaski,* 15 Ill.2d 291, 300.) Here, we do not even have the statements of the jurors themselves, but merely the statement of a newspaper reporter as to what the jurors had told him. This showing was entirely insufficient to establish that the verdict of the jurors was rendered as a result of any improper newspaper publicity.

We have carefully considered the entire record and all of the defendant's contentions and we are satisfied that the evidence established the defendant's guilt beyond a reasonable doubt and that no prejudicial error occurred at the trial. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*