(No. 40892.–)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM STACEY, Appellant.

*Opinion filed September 17, 1974.*

James J. Doherty, Public Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and William F. Linkul, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

In 1958 defendant was convicted by a jury in the circuit court of Cook County for the murder of Darlene Todd and was sentenced to 299 years' imprisonment. In 1962 this court affirmed that conviction. (*People v. Stacey*, 25 Ill.2d 258.) In 1967 the defendant filed a petition for a post-conviction hearing (Ill. Rev. Stat. 1965, ch. 38, par. 122–1) in which he charged error of constitutional dimension in the admission into evidence of his confession and a blood-stained shirt which had been taken from his home without a search warrant. The trial court dismissed the post-conviction petition on the grounds of *res judicata*. An appeal was taken from the dismissal, and the record was filed and the case docketed in this court in 1967. No further action was taken to prosecute the appeal, and no effort was made to have the appeal dismissed. On October 1, 1973, the opinion of this court in *People v. Nunn*, 55 Ill.2d 344, was filed. It is the defendant's position that our decision in *Nunn* restored life to the contention of his post-conviction petition insofar as it challenged the legality of the search for and seizure of his blood-stained shirt from his home. This court in its previous opinion had held that the search was consented to by his wife.

The facts have been set out in our previous decision and will only be restated here to the extent necessary to consider the issue of whether the consent of the defendant's wife was sufficient to excuse the warrant requirement of the fourth amendment of the Federal Constitution.

Mrs. Todd was murdered on November 22, 1957. Defendant was a photographer who had an appointment to photograph Mrs. Todd's baby at her home. The police arrested the defendant in his home at about 9 p.m. the same evening and, after questioning him, noticed scratches on his arm, his nose and a spot of blood on his undershirt. Police officers were then sent to the defendant's home to

obtain the shirt he had been wearing that day. At the hearing on the motion to suppress, the defendant's wife testified that her husband had changed shirts during the day and that during the evening he had informed her that the shirt "is in the bottom drawer." After the police had taken the defendant to the police station she went into their bedroom, took the shirt from the bottom drawer of the dresser, looked at it and then put it back in the drawer. Later when her father came to their apartment she again took the shirt from the bottom drawer and showed it to him. Her father told her that she should not let her mother take the shirt to be washed with the other clothes because it might have something to do with what the police were talking to the defendant about. When the policemen asked her for the shirt she went to the bedroom and obtained the shirt from the bottom dresser drawer and gave it to them. The policemen did not go into the bedroom. In the previous decision in this case, this court stated that even if the defendant's remarks to the officers at the police station could not be construed as a consent to the officers to obtain the shirt "it is quite clear that Mrs. Stacey deliberately saved the shirt for evidence and that she voluntarily surrendered it to the police. Her consent was sufficient." 25 Ill.2d at 265.

In *People v. Nunn,* this court in discussing searches consented to by third persons stated:

> "The problem is not a new one in Illinois. Generally stated, we have followed the rationale that an equal or greater right to the use or occupancy of premises gives such co-occupant the right to consent to a search of the premises, and that any evidence found therein is admissible against a nonconsenting co-occupant." (55 Ill.2d at 347.)

One of the cases we cited as following this rationale was the previous decision of this court in this case.

In *Nunn,* relying heavily on *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507, we held that if a person has a reasonable expectation of privacy then a search may only be had pursuant to a search warrant or the personal consent of the person subjected to the search. If such expectation of privacy exists it could not be waived by another. We held in *Nunn* that to the extent that the previous decisions of this court (including our previous decision in *People v. Stacey,* 25 Ill.2d 258) are inconsistent with *Katz* these decisions were overruled.

Subsequent to our decision in *Nunn* the United States Supreme Court on February 20, 1974, rendered its decision in *United States v. Matlock,* 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988. In that case the defendant was arrested in the front yard of a house in which he lived along with a Mrs. Graff. The officers then entered the house and with the consent of Mrs. Graff but without a search warrant searched the house, including a bedroom which she said was jointly occupied by the defendant and herself. The defendant and Mrs. Graff had been living together for some time as husband and wife. During the course of the search the officers found, in a diaper bag in the only closet in the bedroom, money allegedly stolen from the Federally insured bank which the defendant was charged with having robbed. Concerning consent searches as between husband and wife the court stated: "*** more recent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." (415 U.S. at 170, 39 L. Ed. 2d at 249, 94 S. Ct. at 993.) Citing *Frazier v. Cupp,* 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, and *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, the court stated: "These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant,

but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (415 U.S. at 171, 39 L. Ed. 2d at 249-250, 94 S. Ct. at 993.) Keyed to this statement is footnote 7 (415 U.S. 164, 171 n.7), which states:

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman v. United States,* 365 U.S. 610 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California,* 376 U.S. 483 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

Thus, this court in *Nunn* and the United States Supreme Court in *Matlock* have both rejected the right of a third party to consent to a warrantless search based on a property-interest concept. Although *Matlock* did not adopt the "expectation of privacy" test of *Nunn,* the results in the two cases are not inconsistent. If one has consented to the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be

searched," these facts would indicate that the co-occupant has likewise surrendered his expectation of privacy in the property. In *Nunn* a room had been set aside in the mother's house for the exclusive use of the son and the mother had been permitted into the room only for the purpose of cleaning. Prior to the search consented to by the mother, the son had left the house and had locked the room and instructed his mother to allow no one to enter the room. Thus, the mother did not have "mutual use" of the defendant's room, nor could it be said that the mother "generally had joint access or control for most purposes" of the room.

Although we do not feel that the two tests discussed above would dictate different results in this case, we find it advisable to conform the test applied by this court in determining the validity of warrantless searches consented to by one other than the accused to that applied by the United States Supreme Court. We therefore find that the defendant's subjective "expectation of privacy" is irrelevant and the validity of the search in this case is to be judged by the more objective "common authority" test of *Matlock*.

Turning now to the facts in the present case we find a relationship between the defendant and his wife, as it relates to the use and occupancy of the apartment and the bedroom, quite different from that which existed between the defendant and his mother in *Nunn*. Although the evidence shows that the bottom dresser drawer from which the shirt was taken was used by the defendant alone, the dresser was located in the bedroom mutually used by the defendant and his wife. Instead of establishing limited access to and control of the bedroom, the dresser, or the bottom drawer of the dresser, the evidence establishes a mutual use and control of the room and its equipment and the wife's right of access to the bottom dresser drawer. The dresser was not locked and the wife was not instructed not to look into the drawer. To the contrary, the

defendant told his wife that the shirt was in the bottom drawer, and her conduct in opening the drawer, looking at the shirt, returning it, and then subsequently again removing it from the drawer to show it to her father and again returning it, indicates that she had free access to this drawer. The mere fact that the defendant alone may have used this dresser drawer while his wife may have used another or another dresser does not indicate that the wife was denied the mutual use, access to or control of the drawer.

Such a contention would be similar to that rejected in *Frazier v. Cupp* (1969), 394 U.S. 731, 22 L. Ed. 2d 684, 89 S. Ct. 1420, wherein the defendant and another shared the joint use of a duffle bag. The defendant contended that the other person, who had consented to the search of the bag, only had permission to use one compartment of the duffle bag and that he thus had no authority to consent to the search of the other compartments from which the incriminating evidence against the defendant had been taken. Here, as in *Frazier,* we must hold that in view of the mutual use of the bedroom, the wife's right to access to the dresser drawer located in that room, the defendant's disclosure to his wife that the shirt was in the drawer and his lack of instruction denying her and others access to the drawer, the defendant clearly assumed the risk that his wife would consent to a search of the room, including the bottom dresser drawer from which the blood-stained shirt was taken.

The search consented to by the wife was not contrary to *Katz v. United States, People v. Nunn,* or *United States v. Matlock.* The consent was valid, as it was previously held to be by this court in 25 Ill.2d 258, and the trial court properly dismissed the post-conviction hearing petition on the basis of *res judicata.*

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*