THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVEN BAUGHMAN *et al.*, Defendants.—(MICHAEL SCHARF,
Defendant-Appellant.)

Fourth District   No. 13867

Opinion filed April 7, 1977.

TRAPP, J., dissenting.

Fuller & Hopp, of Decatur (Glenn O. Fuller, of counsel), for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Jerry Finney, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Following a bench trial, defendant Michael Scharf was convicted in the Circuit Court of Macon County of the offense of unlawful possession of cannabis weighing in excess of 500 grams (Ill. Rev. Stat. 1973, ch. 56½, par. 704e) and sentenced to 2 years probation. The sole question raised on appeal is the propriety of the trial court's denial of defendant's motion to suppress evidence seized on August 25, 1975, in a warrantless search conducted by law enforcement officers.

The search and seizure arose under very unusual circumstances, the facts of which are mostly undisputed. In the spring of 1975, Orville Gulick, defendant's grandfather, agreed to sell to the State of Illinois certain portions of a farm near Decatur to be used for highway purposes. A dwelling house and barn were on the land sold. Prior to the sale, defendant had been living with his grandfather in the dwelling house. By June 3, 1975, Gulick had been paid in full for the premises and had ceased living in the house. On July 9, 1975, Gulick executed and sent to the State a written request for certain moving expenses to which he was entitled by statute. In this written document, he certified that he had moved from the

premises. Defendant, however, continued to live in the house and some of Gulick's property remained in the barn.

Arrangements for the vacation of the premises by Gulick and defendant had been handled for the State by James Forrester, a district assistant relocation manager for the State Department of Transportation. His work included management of property from the time of purchase until it was needed for construction, and his duties included sale of buildings or excess land, clearance, surveillance, and the execution of rental agreements. Surveillance included periodic visits to the property and prevention of vandalism and trespassing. It was also his responsibility to remove persons living on the land when necessary by 30-day notice or by court procedure. He testified that after property was purchased by the State, it was normal procedure to allow persons already there to remain for one or two months without payment of rent, but thereafter a rental agreement was usually required. However, he also stated that in some instances the time limit is extended in order to avoid inconvenience to the persons involved, and another factor taken into consideration is the approximate future date that construction will begin.

Forrester testified to having two conversations with Gulick. Defendant was present at the first conversation which occurred in the spring of 1975 while negotiations for the sale were in progress. Forrester stated that no reference was made to defendant remaining on the property at that time. Defendant, however, testified that a possible rental agreement was discussed and Forrester stated that he would have to discuss the proposal with his superiors. Later, after Gulick had moved from the premises, Forrester met with him at Gulick's new home. Defendant was not present. Gulick explained that he would like to have defendant remain on the premises to look after some of Gulick's property. At that time the State did not contemplate immediate construction on the part of the purchased parcel which included the house, barn and surrounding buildings. Accordingly, Forrester informed Gulick that he would see if his superiors would approve an agreement for the State to rent this portion of the parcel to Gulick or defendant. Apparently Forrester did not tell Gulick that defendant would have to leave the premises until agreement was reached. Forrester did, however, certify to his superiors that Gulick had vacated the premises, although actually defendant and some of Gulick's chattels remained on the premises.

Shortly before the search, Forrester came to the house and found defendant there. Forrester stated that he was surprised to see defendant there but congratulated him upon how well he was caring for the place. Forrester did not tell defendant to leave. He further testified that the usual grace period for a former owner to remain on the property after sale without formal rental agreement was still in effect and he felt that

defendant was on the property with his approval. Forrester made no mention in his testimony of a rental agreement being discussed at that time but defendant testified that he asked for such an agreement and Forrester promised to check with his superiors. In any event, no written rental agreement was ever executed. Neither did the State ever give defendant or Gulick any notice to vacate the premises.

On the morning of August 25, 1975, the Macon County sheriff's office received a call from an unnamed informant who advised them that a male and female were living on the property and that marijuana was drying in the barn. A deputy phoned Robert Shaw, Forrester's superior. Shaw told the deputy that he had not given anyone permission to be on the premises and authorized the sheriff's force to make a search of the premises. Without seeking a warrant, law enforcement officers went to the tract and upon arrival saw defendant and a girl outside the house. The officer in charge identified himself and told defendant that they were responding to a report that defendant was trespassing on the land and that marijuana was being grown and stored there. Defendant denied knowledge of marijuana being grown or stored there and told the officers that he had made arrangements with a man representing the State to be on the property. The officers asked defendant if he had rent receipts and defendant responded that he did not but that he was going to pay rent in the future.

The officers did not ask defendant for permission to make a search but they asked him how to get into the barn. Defendant took two of them to the north side of the barn and showed them an open door to the loft. The officers then entered the loft and found a large number of cannabis stalks hanging from the rafters. The officers then informed defendant that they would have to go into the house. Defendant made no response. They then entered through an open door and went upstairs and into a bedroom where they found another male asleep. In the room was an open box containing a green cannabis-like leafy substance and a bottle of pills. The officers detected an odor of cannabis from another upstairs room, the door to which was closed. The officers asked defendant for a key but he answered that he had no key and that if the officers wished to enter, they would have to kick the door in. Defendant stated that the door had been locked as long as he had been there. The officers then kicked in the door and found more cannabis stalks with leaves attached hanging in the room, a cardboard box with plastic bags and a green and yellow trunk.

The trial court denied the pretrial motion to suppress upon the basis that the State was the legal title holder to the premises, entitled to possession and possessed with the authority to authorize the search. The court found defendant to be a trespasser without valid legal claim to be on the premises and having, at most, an expectancy of a future tenancy.

The court also found that no one with authority had authorized defendant to remain on the premises and that any purported agreement also failed for lack of consideration. The court further found that the defendant had no expectation of privacy in the premises.

■■ It is apparent from the undisputed testimony that the State had adopted a policy, as a convenience to those whose land the State had acquired, to permit the former owners to remain upon the land for a short time after conveyance of the property and then if the former landowners had not left to either give them notice to vacate the land or to agree with them concerning a rental of the premises until needed by the State. By authorizing Forrester to deal with the former landowners during this period, the State clothed him with apparent authority to permit former owners or their designees to remain on the property for short periods of time. Here, the evidence is undisputed that Gulick had designated defendant to remain on the premises and Forrester had permitted him to do so apparently pending determination as to whether a rental agreement would be agreed upon. Under this evidence, we cannot agree with the trial court that defendant was a mere trespasser.

■■ Defendant maintains that he was a tenant at the will of the State. (*Woodyatt v. Connell* (1890), 38 Ill. App. 475.) Ordinarily the landlord does not have authority to consent to the search of property in the possession of the tenant. (*Chapman v. United States* (1961), 365 U.S. 610, 5 L. Ed. 2d 828, 81 S. Ct. 776.) In the instant case, however, there is a question of joint possession and control of the property under the loose oral agreement whereby defendant remained upon the land. The cases ruling upon the power to consent to searches under such circumstances have concerned joint or common tenancies. Such a case was *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988, where in a footnote the court stated that the authority given by one who has a possessory interest in property in which others also have a possessory interest, to search that property does not "rest upon the law of property * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (415 U.S. 164, 171 n. 7, 39 L. Ed. 2d 242, 250 n. 7, 94 S. Ct. 988, 993 n. 7.) That language from *Matlock* was discussed and adopted in *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24.

■■ Defendant had two keys to the dwelling and the evidence does not indicate that the State had any. No one from the State was shown to have attempted to enter the house while defendant was there. Although the expectation of privacy is no longer the basis from which to determine

the reasonableness of a search (*Stacey*), the general recognition of the privacy of dwellings would tend to negate any implication that the loose agreement between Forrester, Gulick and defendant contemplated any joint usage of the house. We conclude that the arrangements by which defendant remained upon the premises did not authorize the State to consent to the inspection of the house and defendant did not assume the risk of that happening.

The tacit arrangement concerning the barn has different implications. A barn is not as inherently private a place as a house. The barn was apparently not locked. Although State agents had apparently not entered the barn, it would seem logical that they could have done so and could, if they wished, have stored State property there. The trial court's refusal to suppress evidence found in the barn was correct.

■■ We can find no other grounds upon which the warrantless search of the house can be supported. Although defendant did not object to the officers entry of the house, he did not agree to it either. We are aware of no case holding that an individual's failure to object to the search of a building constitutes a tacit consent to the search. The officers' were not in hot pursuit of the defendant when entry to the house was made. The finding of the marijuana stalks in the barn was not sufficient to create exigent circumstances which would have justified an immediate warrantless search on the theory that if marijuana stalks were in the barn, marijuana was likely to be in the house and likely to be destroyed if time were taken to obtain a warrant. *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969.

For the reasons stated, the conviction and sentence of defendant are reversed and the case is remanded for a new trial. Prior to trial the court should determine, hearing new evidence if necessary, which items of evidence were seized in the search of the house and order those items suppressed.

Reversed and remanded.

MILLS, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

Implicit in the principal opinion is the conclusion that defendant was not a trespasser as was found by the trial court. The testimony of the State land agent, Forrester, is that he would procure possession of the premises by giving a 30 day notice or obtaining a surrender of possession. The conclusion is that defendant enjoyed a present possessory interest in the entire parcel of land and the improvements.

Assuming arguendo that the State retain some form of joint possessory

interest, the purported consent to search by the State (Shaw) does not come within the rule of *United States v. Matlock* (1974), 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988, and *People v. Stacey* (1974), 58 Ill. 2d 83, 317 N.E.2d 24. In each of such cases the consent to search was given by an individual with a sufficient possessory interest who was on the premises at the time when the defendant was absent. Here, the defendant whose property was seized was on the premises and the person who gave consent as one with a copossessory interest was not present. I doubt that we can rationally support a rule which permits peace officers to search without the consent of a person with a possessory interest who is on the premises upon the authority of a consenting person with a possessory interest who is absent.

In a second aspect, one can find no factual basis which distinguishes the rights of the defendant in his possession of the barn from his rights arising from the possession of the house.

For such reason the judgment should be reversed without remandment.