THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
WILLIAM L. GRIFFIN *et al.*, Defendants-Appellees.
First District (1st Division)   No. 76-683

Opinion filed October 3, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Pritzker and Glass, Ltd., of Chicago (Michael L. Pritzker and R. Brent Daniel, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendants, William L. Griffin, James Carson and Vicki A. Detwiler, were charged with possession of marijuana in violation of the Cannabis Control Act (Ill. Rev. Stat. 1975, ch. 56½, par. 704). They moved to quash their arrests and suppress the evidence. After a hearing, the trial court granted defendants' motions. The State appeals pursuant to Supreme Court Rule 604(a)(1) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)), contending that the trial court erred in suppressing the evidence because there was probable cause for defendants' arrests and there was consent for the search.

Defendant Vicki A. Detwiler testified that she was arrested at Union Station on December 3, 1975. Defendant James Carson testified he was arrested at the same time and place. He saw no warrant for his arrest. Defendant William Griffin testified that he was arrested at the Union Station on that date. He was not shown a search warrant.

Frank Tucci, a special agent for the Drug Enforcement Administration (DEA) for five years, testified for the State. On December 2, 1975, Agent Nardini of the DEA had told him that two men and a woman, traveling together in compartment "A" of Car 0431 or 4031 of the Amtrak Southwest Limited, were believed to have three footlockers containing marijuana in their possession. The train would arrive in Chicago on the afternoon of December 3, 1975. Its last stop before Chicago was Joliet, Illinois. Tucci was instructed to board the train to attempt to verify the information. He boarded the Southwest Limited at about 12:30 p.m. on December 3, 1975. Toward the back of the train he found a Pullman car numbered 0431 or 4031. A porter was moving luggage out of compartment "A" onto a platform at the end of the car. Tucci observed the porter carry some footlockers out of that compartment. Two men and a woman, whom Tucci identified as the defendants, were in compartment "A". He walked over to the footlockers and smelled a "terrific odor or smell" about the footlockers. It was his opinion, based in part on his prior experience, that the odor was that of marijuana. He "radioed" Agent Nardini at Union Station and told him he had verified the information. Tucci left the car immediately ahead of defendants. He pointed out the defendants and their luggage to agents waiting in the station.

Agent Charles Nardini of the DEA testified that he received information from Agent Schack of the DEA's New York office. Two men and a woman would be traveling on a train from Flagstaff, Arizona, to Pittsburgh, Pennsylvania, with a stop in Chicago on December 3, 1975. Schack gave a certain car number and a certain compartment. The three persons would be carrying three footlockers of marijuana. Nardini told Agent Tucci to verify the information. Tucci called Nardini by radio verifying the information. Tucci said they were dirty. Nardini alerted the

Chicago Police Department about the defendants. A police department canine unit would be available.

After the train pulled into the station, Tucci pointed out the defendants to Nardini and the others. The defendants helped a porter unload three footlockers from the train onto a cart on the station platform. The dogs were brought over to the footlockers and, according to their handler, the dogs' reaction indicated the presence of marijuana in the footlockers. Nardini identified himself to defendants, told them why they were being stopped and advised them of their *Miranda* rights. They indicated that they understood their rights. He told them about the information he had received and its verification. Nardini informed defendants that the United States Attorney's office had given him permission to detain them in order to get a search warrant. Nardini asked defendants who owned the footlockers. Defendant Carson pointed to two of the footlockers and said they were his and Detwiler's. The other trunk belonged to Griffin. Before they went to the Amtrak office at the station, Nardini advised defendants that if they wanted to expedite the operation and not miss their train, they could consent to a search of the trunks. If there were no narcotics, they would be free to go. Nardini further testified that Carson said the footlockers contained marijuana, not narcotics. The agents did not have to open them, they could take his word for it.

Investigator Eugene Labiak of the Chicago Police Department also testified for the State. He was on duty at the Union Station on December 3, 1975, watching the defendants unload their baggage, consisting of five suitcases and three footlockers. When he was about 1½ to 2 feet from the footlockers, he smelled the odor of marijuana coming from the trunks. Defendants Detwiler and Carson said that two of the trunks were theirs. Defendant Griffin said the third one was his. While they were in the Amtrak office, Griffin and Carson signed written consents to search the footlockers. The footlockers were opened with their help. One of the defendants opened one of the trunks when Labiak had trouble with the key.

■■ The State's first contention is that the trial court erred in quashing the arrests because there was probable cause to arrest the defendants. Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested committed it. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) The circumstances in the arresting officer's knowledge must be viewed practically, not technically. (*Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329.) In this case, the officers had verified information they had received from a fellow

law enforcement officer as to time, number of persons involved and the location of defendants. Tucci, Investigator Labiak and the canine unit added further information about the presence of marijuana. The officers observed defendants help load the trunks onto a cart. Only after all of these facts and circumstances were made manifest were defendants arrested. Clearly, there were sufficient facts and circumstances to believe that an offense was being committed and that defendants were committing the offense. (See *People v. Wolf* (1975), 60 Ill. 2d 230, 326 N.E.2d 766, *cert. denied* (1975), 423 U.S. 946, 49 L. Ed. 2d 280, 96 S. Ct. 361, and the cases cited therein.) On this record, we conclude that the trial court's order quashing the arrests was manifestly erroneous and reverse its order. See *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506; *People v. Slonski* (1976), 40 Ill. App. 3d 319, 320, 352 N.E.2d 292.

■■ The State's second argument is that the trial court erred in ruling that the search and seizure were unlawful because defendants consented to the search. The State contends that defendants freely signed consent to search forms and physically helped the officers to open the trunks. The voluntariness of defendants' consents must be determined from all of the circumstances. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041.) Defendants Carson and Griffin were given *Miranda* warnings prior to their signing the consent forms. The giving of *Miranda* warnings prior to the consent to search tends to show the voluntariness of the consent to the search. (*Cf. People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) Agent Nardini told defendants that he could get a warrant before they signed the forms. In *People v. Magby* (1967), 37 Ill. 2d 197, 226 N.E.2d 33, the court found that informing the defendant that the law enforcement officers could get a warrant sufficiently advised defendant that she need not consent to the search. Similarly, Nardini's statement informed Carson and Griffin that they need not consent to the search. Officer Labiak testified that one of the defendants helped him open one of the footlockers when he had trouble with the key. The record does not contradict the officer's testimony. (*Cf. People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) Viewing the totality of the circumstances, the trial court's ruling that the consents were coerced is manifestly erroneous and should be reversed.

■■ The final issue is whether defendant Detwiler may have the marijuana seized from the footlockers which were Carson's and Detwiler's introduced against her at trial. Applying the common authority test adopted in *People v. Stacy* (1974), 58 Ill. 2d 83, 317 N.E.2d 24, Carson's consent to search the footlockers allowed the police to search them and Detwiler cannot complain because as a co-owner of the trunk

Detwiler is considered to have assumed the risk that her co-owner would do so. On the testimony presented at the hearing, we conclude that Carson's consent to search is within the common authority test.

The order of the trial court quashing the defendants' arrests and suppressing the evidence is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.