**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190448-U

Order filed February 16, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0448 Circuit No. 18-CF-375 |
| | ) | |
| DERRICK L. STERRETT, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Presiding Justice O'Brien and Justice Holdridge concurred in the judgment.

**ORDER**

¶ 1     *Held*:    Trial court properly denied defendant's motion to suppress where officers' entry into his home was valid under consent exception to fourth amendment warrant requirement.

¶ 2      Following a jury trial, defendant, Derrick L. Sterrett, was convicted of unlawful possession of a weapon by a felon based on evidence seized during a search of his residence. He appeals, arguing that the trial court erred in denying his motion to suppress evidence because officers entered his home without a warrant and without valid consent. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Around 5:30 a.m. on June 24, 2018, police responded to a domestic battery call at 1107 East Willcox. When they arrived, Chev'on Copeland informed them that she had an argument with defendant, her boyfriend, several hours earlier and that he struck her. When she left the house, defendant locked her out. She needed to get into the house to get her clothing and other personal items. When officers entered the house, defendant was sleeping. They recovered a handgun on the bed near defendant and arrested him without incident.

¶ 5        Defendant was charged with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) and domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2018)). He filed a motion to suppress, alleging the officers' entry into his home was unlawful because Copeland did not have the authority to consent to their entry and that officers acted unlawfully when they assisted Copeland in opening a locked screen door.

¶ 6        At the motion hearing, defendant testified that he had resided at 1107 East Willcox in Peoria for seven years and that he bought the single family residence in either 2012 or 2013. On June 23, 2018, defendant and Copeland, whom he had been in a relationship with for two years, hosted a party at the house. Defendant left the party and returned home around 4 a.m. When he sat down on the couch, he noticed a gun wedged between the cushions. He put the gun on the table and went to the bedroom where Copeland was sleeping. He woke her up and asked her if she knew that there was a gun in the couch. They got into an argument, and defendant slapped Copeland in the face. Copeland left.

¶ 7        As soon as Copeland was gone, defendant locked the screen door, the main front door, and the back door to keep her out. The screen door had a broken handle and could not be opened from outside the house once it was locked. Copeland had keys for the main front door, but neither

defendant nor Copeland had a key to the screen door. Defendant called Copeland and told her that the doors were locked and not to come back. He went to sleep and woke up around 6 a.m. or 7 a.m. to police placing him in handcuffs.

¶ 8　　　　Officer Travis Ellefritz's body camera footage was shown to the trial court. It depicted Ellefritz and two other officers approaching Copeland and asking her about the incident. Copeland's daughter and mother are standing next to her. Ellefritz asks Copeland if defendant was present in the house when she left. Copeland replies, "Yeah." Copeland then informs the officers that she wants to get her personal items and her car keys out of the house. Ellefritz asks Copeland what happened to her eye, and she replies, "He punched me in the face."

¶ 9　　　　During the next several minutes, either Copeland or an officer repeatedly knock on the screen door and the windows of the house with no response from inside. Ellefritz then asks Copeland if she lives at the house and if she has keys to the house. Copeland responds, "Yeah," and shows her keys to him. She then points to the front door and tells the officers that the screen door is locked. She confirms that she has keys to the inside door but not the screen door. Ellefritz asks Copeland if she receives mail at the Willcox address, and she answers that she does. He informs Copeland that she is "technically a resident" of the house. He again asks Copeland if she has keys to the house, and she states that she does.

¶ 10　　　　At that point, Copeland's daughter can be heard asking Ellefritz if he could "bust the screen door open" for them. Ellefritz replies, "I can't." The body camera footage then shows Copeland's daughter pulling on the bottom of the screen door until it pops opens. Copeland moves toward the main door with her keys. Ellefritz stops her and offers to check the house for defendant's presence for safety reasons. Copeland hands the keys to him, and Ellefritz unlocks the front door.

¶ 11        Copeland testified that she and defendant had been dating for three or four years and that her mailing address was defendant's home address, 1107 Willcox. She stayed with defendant most of the time and was at his house every day. However, she lived with her mother at a different address. Copeland testified that she had been staying at defendant's house "on and off" for a while. She owned a television and some bedroom furniture inside the house.

¶ 12        Copeland called police to 1107 Willcox on the morning of June 24, 2018. When they arrived, she told them that she had an argument with defendant and that he punched her in the face, causing her left eye to swell shut. She wanted to get her clothes, her furniture, and her TV out of the house, but the front screen door was locked. It could not be opened from the outside once it was locked because the door handle was broken. After knocking on the door for several minutes, she asked her daughter to break the front screen door so they could get into the house.

¶ 13        On cross-examination, Copeland admitted that when the officers approached, she told them that she lived at 1107 Willcox with defendant and that she owned furniture inside the house. In response to questioning by the court, Copeland stated that she left 1107 Willcox immediately after her fight with defendant and returned about 30 minutes later with her mother and daughter.

¶ 14        The trial court denied defendant's motion to suppress, finding that Copeland had apparent authority to consent to the officers' entry. Defendant filed a motion to reconsider, which the trial court denied. In denying the motion to reconsider, the court noted that Copeland had "long ago" surpassed the status of a guest or invitee and "had authority to get in the house."

¶ 15        The State dismissed the domestic battery charge prior to trial. Following a jury trial, defendant was found guilty of possession of a weapon by a felon and sentenced to two years' imprisonment.

¶ 16                                    II. ANALYSIS

¶ 17        Defendant contends that the trial court erred in denying his motion to suppress evidence because officers entered his home without his consent and Copeland lacked both actual and apparent authority to consent to the officers' warrantless search of the residence.

¶ 18        On a motion to suppress, the defendant bears the burden of establishing a *prima facie* case that the evidence at issue was obtained by an illegal seizure. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). Once the defendant makes out a *prima facie* case that a search was unreasonable, the burden shifts to the State to demonstrate the constitutionality of the search. *People v. Brooks*, 2017 IL 121413, ¶ 22. In reviewing a trial court's denial of a motion to suppress, this court employs a two-part standard. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The trial court's factual findings are accepted unless they are manifestly erroneous. *Id.* Whether the trial court's ultimate ruling was proper is reviewed *de novo. Id.*

¶ 19        Here, there is no question that defendant established a *prima facia* case of an unreasonable search. The police entered defendant's home without a warrant, and it is well settled that the fourth amendment prohibits the warrantless search of a person's home as *per se* unreasonable. See *Welsh v. Wisconsin*, 466 U.S. 740, 754 (1984); *People v. Bull*, 185 Ill. 2d 179, 196-97 (1998).

¶ 20        The burden therefore shifts to the State to demonstrate that the search was lawful. The State can carry that burden by proving the existence of established exceptions to the warrant requirement, one of which is voluntary consent. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (a search authorized by consent is wholly valid even without a warrant). A voluntary consent search is valid as long as consent is given, if not by defendant, by a third party who possesses common authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

¶ 21                                A. Authority to Consent

¶ 22        Common authority does not depend on property law but instead rests on mutual use of the

5

property by persons generally having joint access or control for most purposes. *United States v. Matlock,* 415 U.S. 164, 171 (1974); see also *People v. Stacey*, 58 Ill. 2d 83, 89 (1974) (recognizing the common authority test in third-party consent cases in Illinois). The authority justifying third party consent is based on the concept that mutual use of the property makes it reasonable to recognize that each may, in his or her own right, permit the inspection of the premises. *People v. Burton*, 409 Ill. App. 3d 321, 328 (2011). Common authority exists in family, marital, and cohabitant relationships. *Id.* When a person who has common authority over the premises consents to a search, his or her consent is valid against an absent, nonconsenting person who shares that authority. *Matlock,* 415 U.S. at 171-72.

¶ 23　　　　Common authority may be either actual or apparent. Under the apparent authority doctrine, a warrantless search does not violate the fourth amendment where the police receive consent from a third party who they reasonably believe possesses common authority but who, in fact, does not. *Rodriguez*, 497 U.S. at 185-86. If the facts available to the officer cause a reasonable person to believe that the consenting person had authority over the premises, the search is valid. *Id.* at 188-89. If the facts do not, an officer may not simply accept a third-party's consent, and a warrantless search without further inquiry is unlawful. *Id.* It is the State's burden to prove the officer was reasonable in believing that the consenting party had authority to consent. *Burton*, 409 Ill. App. 3d at 329.

¶ 24　　　　In *People v Bell*, 403 Ill. App. 3d 398 (2010), the reviewing court found that the trial court erred in granting the defendant's motion to dismiss, where the defendant's girlfriend consented to a warrantless search of his home and computer. *Bell*, 403 Ill. App. 3d at 408. In finding that the girlfriend had joint access and control of the residence, the court noted that the girlfriend gave defendant $7,200 to help pay his mortgage and still had personal items and furniture in his house.

6

*Id.* at 407. The court concluded that the girlfriend, who had been living with the defendant for the past ten months, had actual common authority to consent to the search despite the defendant's claims that they had an argument and he told her to get out of the house. *Id.* at 408.

¶ 25    Here, Copeland and defendant both testified that they had been dating for a few years. Copeland stated that she had been living with defendant "off and on" for a while, and she informed police that she had been living with defendant when they arrived at 1107 Willcox Avenue on the morning of June 24, 2018. She also testified that she received mail at that address and that she owned furniture and a television inside the house. Finally, Copeland had keys to the primary doors of the residence. Although she did not have a key to the screen door, both Copeland and defendant testified that the screen door was rarely locked, and, when it was, it could not be unlocked from the outside with or without a key. This evidence supports the trial court's finding that Copeland cohabitated with defendant and had access and control over the residence. Thus, Copeland had actual common authority to consent to the officers' entry and search of the house.

¶ 26    Even if Copeland did not have actual authority, the evidence presented at the motion to suppress hearing demonstrated that she had apparent authority to consent to the officers' entry. Although a party may lack actual common authority to consent to the entry of police, a warrantless search is still valid if the officers reasonably believe under the circumstances that the third party possessed such authority. See *Rodriguez*, 497 U.S. at 186. In this case, when officers arrived at the scene, Copeland informed them that a domestic dispute occurred and that defendant locked her out of the house. They were then told that Copeland received mail at the residence, that she spent the night at the residence, and that she had keys to the residence. Copeland also informed them the officers that she had clothing and furniture inside the house. These facts, known to the officers outside the residence that morning, support Copeland's apparent authority to consent to their entry.

7

B. Defendant's Objection

¶ 28        Defendant argues that even if Copeland had actual or apparent authority to consent, his objection to the warrantless search by locking the doors to his house invalidated Copeland's authority and rendered the search unlawful.

¶ 29        When a third-party, who has common authority over the premises, consents to a search of the premises, his or her consent is valid against an absent, nonconsenting co-habitant. *Rodriguez*, 497 U.S. at 179-80 (officers' entry was reasonable even though defendant was asleep in the bedroom when his apparent live-in girlfriend gave officers consent to enter the apartment); *People v. Parker*, 386 Ill. App. 3d 40, 45 (2007) (warrantless search of defendant's home was reasonable where police obtained voluntary consent to search from cohabitating girlfriend while defendant was sleeping in the bedroom). Nevertheless, a search will be found unreasonable, even if a person who has common authority consents, if a defendant is physically present and expressly states his or her refusal to allow officers to enter and search the residence. See *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (warrantless search of marital residence on the basis of consent given to police by defendant's wife was found to be unreasonable and invalid because defendant was physically present, standing at the door, and expressly refused to consent); see also *People v. Santovi*, 2014 IL App (3d) 130075, ¶ 39 (officers exceeded the scope of consent to enter the home given by defendant's husband where defendant "demonstrably objected" to police intrusion by locking herself in the bathroom).

¶ 30        In *Randolph*, the United States Supreme Court addressed the question of whether a warrantless search based on a co-occupant's consent is valid if the other occupant is present and expressly refuses to consent. *Randolph*, 547 U.S. at 107. In that case, officers reported to a domestic dispute call at the defendant's address. When they arrived, they found the defendant's

8

estranged wife standing outside. She claimed the defendant was a cocaine user and had taken their son and left. The defendant returned a few moments later and explained that he took the child to a neighbor's house out of concern for the child's welfare. One of the officers asked the defendant for permission to search the house, and the defendant refused. The officer then turned to the wife, who consented. The search led to the discovery of cocaine and, ultimately, the defendant's arrest. *Id.* The Court held that "a warrantless search of a shared dwelling for evidence over the *express refusal* of consent by a *physically present* residence cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." (Emphasis added.) *Id.* at 120. In crafting an exception to the validity of co-habitant consent, the Court emphasized that an express objection and physical presence were required and noted that "the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121.

¶ 31 Illinois courts have applied *Randolph* narrowly. For example, in *Parker*, the court distinguished the circumstances from *Randolph* and found that the warrantless search of the defendant's home, after the defendant's live-in girlfriend gave consent, was reasonable and did not violate the fourth amendment. *Id.* at 45. There, officers entered an apartment the defendant shared with his girlfriend while the defendant sleeping in the bedroom and arrested him after finding cocaine. The State argued that the officers obtained valid consent to search the premises from the co-habitating girlfriend. The defendant maintained that the search was unreasonable because he woke up to police seizing him at gunpoint and was deprived of the opportunity to object to the search. *Id.* at 43-44. The appellate court analyzed *Randolph* in reversing the suppression of evidence. It noted that the defendant in *Randolph* was standing next to officers verbally objecting when his wife consented. The court then concluded that, although the defendant was sleeping nearby, unlike the defendant in *Randolph*, he was not present at the "threshold colloquy" when his

girlfriend gave consent to enter the premises. Thus, the co-habitant's consent was valid, and the officer's warrantless entry was reasonable. *Id.* at 45.

¶ 32     Here, similar to the defendant in *Parker*, defendant was asleep in his bedroom when his girlfriend gave officers consent to enter the residence. Defendant was not physically present while the officers were assisting Copeland in gaining access to the house, and he did not expressly state his objection to allow officers to enter and search the premises. Accordingly, Copeland's voluntary consent made the warrantless search reasonable as to defendant, even though he was asleep nearby.

¶ 33     In fourth amendment jurisprudence, reasonableness is measured by examining the totality of the circumstances. See *People v. McDonough*, 239 Ill. 2d 260, 272 (2010). Here, the facts demonstrate that Copeland was co-habitating with defendant and therefore had common authority to consent to the officers' entry into the house in defendant's absence. She requested the officers' assistance in gaining access to the home to retrieve her belongings and handed Officer Ellefritz her key to unlock the front door. Defendant was asleep in the bedroom and did not make his presence known. Under these circumstances, the warrantless search of defendant's home was reasonable and did not violate his fourth amendment rights. We therefore affirm the trial court's denial of his motion to suppress.

¶ 34                                         III. CONCLUSION

¶ 35     The judgment of the circuit court of Peoria County is affirmed.

¶ 36     Affirmed.