(No. 60897.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN BRITZ, JR., Appellee.

*Opinion filed February 6, 1986.—Rehearing denied June 2, 1986.*

MILLER, J., took no part.
SIMON, J., specially concurring.

Neil F. Hartigan, Attorney General, and J. William Roberts, State's Attorney, both of Springfield (Jill Wine-Banks and Roma J. Stewart, Solicitors General, and Mark L. Rotert and David E. Bindi, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Denise M. Ambrose, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas and Jane Raley, of the Office of the State Appellate Defender, of Springfield, for appellee.

Richard J. Daley, State's Attorney, of Chicago, *pro se* (Joan S. Cherry and Kevin Sweeney, Assistant Attorneys General, of counsel), as *amicus curiae*.

JUSTICE WARD delivered the opinion of the court:

Following a jury trial in the circuit court of Sangamon County, the defendant, John Britz, Jr., was found guilty of the murder of Timothy Meisner. The appellate court reversed and remanded for a new trial (128 Ill. App. 3d 29), and we granted the State's petition for leave to appeal under our Rule 315 (94 Ill. 2d R. 315).

A detailed factual background of this case appears in the opinion of the appellate court, and it will be necessary to state only the facts related to the issues considered here.

The victim, Timothy Meisner, was found dead of a gunshot wound at a gasoline station in Springfield on June 9, 1979. The defendant at the time was 19 years of age, a high school drop-out with a fourth-grade reading level. He had a history of drug and alcohol abuse. On June 11, 1979, two days after the murder, the defendant

contacted the Springfield Youth Services Bureau, which provides counseling. He spoke with several counselors during the day, and seemed to have found one counselor, Cheryl Penman, whom he had met on a prior occasion, most helpful. He phoned her later that day and told her that "somebody had been murdered and that he [the defendant] had done this." Penman informed the police of the conversation and at their request consented to have an eavesdropping device placed on one of the telephones at the Youth Services Bureau. A court order was obtained that authorized the use of the device from 5 p.m. on July 3, to 4:59 p.m. on July 13, 1979. The police and Penman agreed that whenever the defendant would phone the Bureau's answering service, she would return his call on the phone with the device attached. Detective Louise Lange-Kempf suggested conversational techniques for Penman's use in order to elicit pertinent information from the defendant.

Twelve conversations between the defendant and Penman were recorded, and throughout the conversations the defendant denied being involved in Meisner's murder. In the course of the conversations Penman repeatedly told the defendant that she was very concerned about him and advised him to confide in her. Penman appeared to abandon the role of counselor and adopt a very personal level of conversation. In these conversations she told the defendant that his involvement with the police "turns me on," and that the defendant was "a big man to me. A real man." This was obviously enticing to the defendant, and he told Penman that he loved her. Penman continually urged the defendant to go to the police and tell the truth about the murder.

The last recorded conversation took place on the evening of July 12, 1979. The defendant, apparently at Penman's suggestion, met her at the detective bureau that evening and gave false exculpatory statements to the po-

lice. The police challenged their truthfulness, and he acknowledged that they were false. The defendant later gave confessions to the murder of Meisner. The confessions were taken on July 14 and July 15, 1979, and on October 6, 1982. (The original complaint against the defendant was dismissed in 1979 but prosecution was reinstituted in 1982, apparently because of new evidence.)

The defendant contends that the trial court's conduct of the *voir dire* examination of jurors resulted in error under our holding in *People v. Zehr* (1984), 103 Ill. 2d 472. *Zehr* was handed down subsequent to the trial in this case, but the defendant says that its holding should be applied retroactively. As we are affirming the appellate court's judgment providing for a new trial it is appropriate to examine the question. The defendant says that it was error for the trial court to deny the defendant's request to have these questions asked on the *voir dire* examination: (1) whether the jurors understood that the defendant was presumed to be innocent of the charge; (2) whether the jurors understood that the defendant need not produce any evidence; and (3) whether the jurors could return a verdict of not guilty if the prosecution failed to prove each and every element of the offense. In *Zehr,* we held it was error for the trial court not to have granted the defendant's request that three questions substantially the same as those submitted here be asked of prospective jurors. As stated, *Zehr* was decided after the trial here. Supreme Court Rule 234 at the time of trial provided:

"The court shall conduct the *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate touching their qualifications to serve as jurors in the case on trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate, or may permit the parties to supplement the examination by such direct in-

quiry as the court deems proper. Questions shall not directly or indirectly concern matters of law or instructions." (87 Ill. 2d R. 234.)

Rule 234 explicitly prohibited questions during the *voir dire* examination which "directly or indirectly concern[ed] matters of law or instructions." (87 Ill. 2d R. 234.) As the holding in *Zehr* represented a change in Illinois law it is given prospective application. *People v. Fife* (1979), 76 Ill. 2d 418, 425-26; *People v. Prim* (1972), 53 Ill. 2d 62, 76; *People v. Montgomery* (1971), 47 Ill. 2d 510, 519.

The State argues that the appellate court erred in holding that the tape-recorded conversations between the defendant and Penman should have been admitted in evidence. The State made an *in limine* motion to bar the tape evidence from being submitted to the jury. It argued that the defendant's repeated denials of his guilt constituted self-serving hearsay. The defendant responded that because he did not know the conversations were being recorded, the tapes were not inadmissible as self-serving. The trial court granted the State's motion, but the appellate court reversed. It held that the tapes should have been admitted for the purpose of showing the defendant's state of mind, which, it held, was relevant on the question of voluntariness of his subsequent confessions. The State contends here that the voluntariness of the confessions was for the trial court to decide and because the trial court found the confessions to be voluntary there was no question for the jury to consider, as the tapes were relevant only on the question of voluntariness.

It is indeed for the trial court to judge the voluntariness of a confession and, thus, its admissibility. (*People v. Kincaid* (1981), 87 Ill. 2d 107, 119.) The issue of voluntariness of a confession, however, must be distinguished from the question of its truth or falsity. Once ad-

mitted in evidence, the jury decides the weight to be given a confession. (*People v. DiGerlando* (1964), 30 Ill. 2d 544, 551; *People v. DeSimone* (1963), 27 Ill. 2d 406, 409; *People v. Stacey* (1962), 25 Ill. 2d 258, 269.) The content and circumstances of a confession are of course pertinent to the question of its truth and the weight to be given to it. The recorded conversations were pertinent. The defendant's confessions of July 14 and 15, 1979, were taken within a few days of his conversations with Penman. It is clear that the defendant was attracted to Penman, and considering their conversations he, in a twisted way, might have thought Penman would be impressed by the confessions. The jury should have been allowed to hear how Penman appealed to a naive and distorted sense of masculinity in attempting to have the defendant implicate himself in the crime. These appeals of Penman were relevant to the truth or falsity of the confessions, especially in light of the defendant's credulousness. Even if the jury did hear some testimony that Penman had attempted to exert influence over the defendant, the testimony could not substitute for the effect of hearing the tapes.

The State argues that the tapes do not satisfy the "state of mind" exception to the hearsay rule. That exception concerns the admission of language of a declarant that tends to show his state of mind at the time of the utterance. (See *People v. Goodman* (1979), 77 Ill. App. 3d 569, 574; Cleary & Graham, Illinois Evidence sec. 803.4 (4th ed. 1984); McCormick, Evidence sec. 249, at 590 (2d ed. 1972).) But hearsay is not involved here, as the stimulating language of Penman is admissible not for its truth, but for its effect on the listener (defendant). (See McCormick, Evidence sec. 249, at 589-90 (2d ed. 1972); Cleary & Graham, Illinois Evidence sec. 801.5 (4th ed. 1984).) The tapes were relevant to the weight to be given the defendant's confessions and should have

been admitted into evidence for this purpose.

For the reasons given, the judgment of the appellate court is affirmed and the cause remanded to the circuit court for a new trial consistent with this opinion. Even though *People v. Zehr* (1984), 103 Ill. 2d 472, will not be applied retroactively, that does not prohibit its application on defendant's retrial, since we here reverse on grounds unrelated to *Zehr*.

*Affirmed and remanded,
with directions.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE SIMON, specially concurring:

I fully concur in the court's decision that the defendant is entitled to a new trial. I concur specially, however, to voice my disagreement with the majority's treatment of the *voir dire* issue.

I see no reason for the court to decide in this case whether *People v. Zehr* (1984), 103 Ill. 2d 472, should be applied retroactively. The court states that examination of that question is appropriate because it is "affirming the appellate court's judgment providing for a new trial." (112 Ill. 2d at 318.) But this is the very reason why retroactivity is not at issue here: as the majority itself correctly concludes, at the retrial in this case a *prospective* application of *Zehr* will require that the tendered questions be asked at *voir dire* (112 Ill. 2d at 321). It thus seems to me anomalous to choose this case as one in which to express an opinion on retroactivity.

Even if there were to be no retrial ordered on other grounds, we would not need to reach the retroactivity question here because the failure to ask the *Zehr* questions in this case was reversible error in any event. This court's decision in *Zehr* affirmed the decision of our ap-

pellate court that the trial judge committed reversible error in refusing to probe on *voir dire* the jurors' willingness to return a not guilty verdict if the State did not sustain its burden of proof, and their attitudes regarding the presumption of innocence, the fact that the defendant need not produce any evidence and the fact that his failure to testify cannot be held against him. (*People v. Zehr* (1982), 110 Ill. App. 3d 458.) The appellate court filed its opinion in *Zehr* in November 1982; the trial of defendant Britz commenced some six months later, in April 1983. Thus, at the time the Britz jury was selected, the circuit judge was required by the appellate court's opinion in *Zehr*, the most recent decision of our appellate court on the issue, to make the requested inquiries of the jurors. Whether or not the supreme court decision in *Zehr* is to be given retroactive application, certainly the appellate court's judgment must be given prospective effect.

In overlooking this chronology and addressing the retroactivity question here the majority has implicitly taken the unusual position that an appellate court decision which would otherwise apply to *future* trials—such as Britz' original trial—is denied such effect because the appellate court's opinion is later ratified by the supreme court. Not only does this position seem illogical, it also sends the unfortunate message that trial judges need not follow the edicts of our appellate court unless and until they are confirmed by this court. I note in passing that the appellate court's reversal on the *voir dire* issue in this case (128 Ill. App. 3d 29) is premised on the appellate court's opinion in *Zehr* and merely refers to the fact that the supreme court eventually placed its *imprimatur* on that holding.

Since the majority nonetheless addresses the merits of the retroactivity question, I feel it appropriate to state my view that this court's decision in *Zehr* should

be given effect in all cases pending on direct review. The majority reaches a contrary conclusion, asserting without explanation that *Zehr* "represented a change in Illinois law" (112 Ill. 2d at 319). I disagree.

Rule 234 (103 Ill. 2d R. 234) prohibits *voir dire* questions which "directly or indirectly concern matters of law or instructions." This court's decision in *Zehr*, however, did not purport to invalidate this provision of Rule 234, but only interpreted it as permitting the tendered questions because each went " 'to the heart of a particular bias or prejudice which would deprive defendant of his right to a fair and impartial jury.' " (103 Ill. 2d 472, 477, *quoting* 110 Ill. App. 3d 458, 461.) As the appellate court in *Zehr* further noted:

"While Supreme Court Rule 234 (87 Ill. 2d R. 234) proscribes questioning jurors concerning matters of law or instructions, we do not so perceive the supplemental questions as concerning such, but rather see them as directly probing for bias and prejudice." 110 Ill. App. 3d 458, 461.

Similarly, our recent decision in *People v. Stack* (1986), 112 Ill. 2d 301, held that the trial court erred in refusing to ask prospective jurors about their feelings concerning the insanity defense. As I read *Zehr* and *Stack*, they simply hold that Rule 234 was never intended to preclude *voir dire* questions probing for bias against "controversial legal requirement[s]." (See *People v. Stack* (1986), 112 Ill. 2d 301, 312.) *Zehr*, therefore, as I view the dimensions of that holding, did not announce a new standard in conflict with Rule 234, and there has been no break with prior law sufficient to overcome the general presumption that judicial decisions have retroactive effect. See *Solem v. Stumes* (1984), 465 U.S. 638, 642-43, 79 L. Ed. 2d 579, 586-87, 104 S. Ct. 1338, 1341-42.