THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LISA CHICOS, Defendant-Appellant.

First District (1st Division)   No. 1—88—2960

Opinion filed October 29, 1990.

Lawrence Wolf Levin and Steven R. Decker, both of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Diann L. Doppelt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Lisa Chicos was found guilty of possession of controlled substances and sentenced to four years in the Illinois Department of Corrections. Chicos appeals.

On October 30, 1987, Detective Charles A. Redman of the Chicago police department executed a complaint for a search warrant. In support of the complaint, Redman submitted his sworn affidavit. The affidavit stated, in pertinent part, that Redman had a conversation with a cooperating individual (CI), that Redman had known the CI for over one year, and that during the last six-week period, the CI supplied information that resulted in the execution of two search warrants. As a result of those warrants, narcotic contraband was seized and the possessing person arrested. Redman's affidavit stated that on October 30, 1987, the CI told Redman that early that morning the CI went to 2344 West Grand Avenue, Chicago, Cook County, Illinois, that upon arrival, he went to the second floor apartment and purchased marijuana obtained from a rear garage from "Torch." Torch was described as a white male, 39 years old, 5 feet 8 inches tall, 200 pounds, with light brown hair and brown eyes.

Based on these averments, a search warrant was issued. Later that day, when Redman and other police officers executed the warrant, four individuals were present in the apartment, including Chicos. The apartment was searched and marijuana, valium, and a triple beam scale were found. Subsequently, Chicos was arrested, charged with possession of controlled substances, and confessed that she lived in the apartment and that the contraband was hers.

Prior to trial, Chicos filed a motion to quash the search warrant which included a *Franks* motion. At the hearing on the motion, Chicos testified that David Stone lived at the 2344 West Grand Avenue apartment; that Stone left the apartment on October 29, 1987, for Florida, and that he was not at the apartment at any time on October 30, 1987. Chicos described Stone as a man who was 5 feet 8 inches, 175 to 180 pounds, who had bright red hair and beard, and was known as "Torch." Additionally, Chicos testified that on October 30, 1987, she was at 2344 West Grand Avenue in Chicago, but that her

residence was 412 Oak Street in Glen Ellyn; that she spent the night of October 29, 1987, with her friend Rhonda Shue at the 2344 West Grand apartment; that Chicos and Rhonda Shue stayed at the apartment the entire day of October 30, 1987, and were later joined by some of Rhonda Shue's friends around 4 p.m. The court denied the motion to quash the search warrant and also denied the request for a *Franks* hearing on the grounds that Chicos had not made a substantial showing.

Then, Chicos presented a motion to suppress her confession. The People called Officer Redman, who testified that subsequent to the execution of the search warrant, he had a conversation with Chicos in the apartment's bedroom; that he advised Chicos of her *Miranda* rights; that Chicos said that she understood those rights and refused to talk to Officer Redman; that Chicos went into the living room for approximately five minutes but returned to the bedroom, where she indicated that she wanted to talk; and that Chicos then stated that she lived in the apartment and that the contraband was hers.

Officer Kenneth Cullen also testified. He testified that on October 30, 1987, he told Chicos that they were touring the area and found someone tampering with her garage. When Chicos agreed to come downstairs to identify the alleged subject, a man accompanied her. As they walked towards the squad car, an officer in the back of the car stepped out and detained Chicos and her male companion. Then, Chicos and the man were escorted back to the 2344 West Grand apartment, where the search warrant was executed. Officer Cullen's partner, Officer Michael Landano, accompanied Officer Cullen on October 30, 1987. Officer Landano testified to the same sequence of events as Officer Cullen. However, Officer Landano did not enter 2344 West Grand to execute the search warrant.

Next, Lieutenant Michael Maher testified that he also executed the search warrant on October 30, 1987. He testified that he heard Detective Redman read Chicos her *Miranda* rights in the bedroom, and that he heard Chicos say that she understood her rights. Officer Maher also testified that a short while later, Officer Boyle came into the bedroom and told Detective Redman and Maher that Chicos wanted to speak with Redman. Then, Maher heard Redman call Chicos into the bedroom and heard Chicos say, "all of this dope is mine." Then, Maher testified that Chicos went back into the living room.

Additionally, all of the officers and detectives testified that neither physical nor mental coercion was used to obtain Chicos' statements.

Chicos testified that on October 30, 1987, she was in the bedroom at 2344 West Grand Avenue. At approximately 9:30 p.m., she opened

the window and saw two officers. One of the officers told her that someone was breaking into the garage. Additionally, Chicos testified that her friend, Rhonda Shue, gave her some keys; that she went downstairs; that when she approached the squad car, she was "swarmed" by police officers with pointed guns; that when Detective Redman asked her if she lived there, she answered no; that Detective Redman showed her a search warrant and asked her to go upstairs; and that she opened the door with the keys Rhonda gave her and that she let the officers inside the apartment. Finally, Chicos testified that as she went from room to room, she was not read her rights; that the search lasted about an hour and a half; and that at no time did she admit that the drugs were hers or that she lived in the apartment.

After arguments, the trial court found that Chicos received and understood her rights; that she invoked her right to remain silent; and that when Chicos reinitiated a conversation, she voluntarily waived her rights. The trial court denied Chicos' motion to suppress her confession.

Subsequently, Chicos was tried before a jury for the offense of possession of controlled substances. At trial, the testimony of the arresting officers was substantially similar to their testimony stated above. However, Officer Redman testified that upon gaining entry to the apartment, he found two plastic bags containing green plants, six clear plastic bags containing white powder, 10 clear plastic bags containing blue pills, a triple beam scale, and women's clothing and shoes. Additionally, Detective Kouchoukos testified that at the police station, he asked Chicos where she lived and she stated that she resided at 2344 West Grand Avenue. Officer Boyle also testified, stating that he was with Chicos continuously during the search, except for the two times that Detective Redman spoke with Chicos in the bedroom, and that he did not hear Chicos read *Miranda* rights nor did he hear Chicos make any statements regarding ownership.

Finally, the State called Linda Jenkins, a chemist for the Chicago police department, to identify the seized items. She testified that the blue pills contained diazepam; that the substance in the clear packets tested positive for cocaine, and that the packets containing a green leafy substance tested positive for cannabis.

After Jenkins testified, the State rested. Chicos did not testify on her own behalf. Subsequently, the jury found Chicos guilty of possession of controlled substances (Ill. Rev. Stat. 1985, ch. 56 1/2, pars. 1401(a)(2), 704(e), 1401(f)), and the trial court sentenced Chicos to four years in the Illinois Department of Corrections. For the reasons set forth below, we affirm Chicos' conviction.

■■ First, Chicos argues that the trial court erred in denying an evidentiary hearing under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, because she made a substantial preliminary showing of falsity in the search warrant affidavit. We disagree. In *Franks*, the Supreme Court permitted a limited challenge to the veracity of a warrant affidavit when (i) there is a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and (ii) the allegedly false statement was necessary to the finding of probable cause. (*Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674.) The *Franks* court provided the following guidelines to determine the sufficiency of a preliminary showing: the search warrant affidavit is presumed valid; any attack on the affidavit's veracity must be more than conclusory and must be supported by more than a desire to cross-examine; allegations of deliberate falsehood or reckless disregard of the truth are necessary and they must be supported by an offer of proof; allegations of simple negligence are insufficient; those portions of the affidavit which are allegedly false must be specifically identified; affidavits or otherwise reliable statements of witnesses (or satisfactory explanations of their absence) must accompany any challenge; and only the veracity of governmental affiants may be challenged. Even when the foregoing criteria have been satisfied, an evidentiary hearing is required only under circumstances where, if the material "that is the subject of the alleged falsity or reckless disregard is set to one side, there remains [in]sufficient content in the warrant affidavit to support a finding of probable cause." (*Franks*, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.) In determining whether a "substantial preliminary showing" has been made, the trial court must carefully balance the affidavit's averments versus those statements which support Chicos' challenge to the warrant, and its judgment will not be disturbed provided its discretion was exercised within permissible limits. *People v. Lucente* (1987), 116 Ill. 2d 133, 153, 506 N.E.2d 1269.

■■ The trial court acted within the scope of its discretion in determining that Chicos failed to make a substantial preliminary showing that a false statement was made in the search warrant affidavit, notwithstanding her testimony that no one came to the apartment in the early morning hours of October 30, 1987, that she was in the bedroom most of the day on October 30, 1987, that "Torch" had red hair rather than light brown, and that "Torch" was out of the State. The trial court was in the best position to determine the veracity of her statements in view of the fact that she was an interested party (*Peo-*

*ple v. Lucente* (1987), 116 Ill. 2d 133, 154, 506 N.E.2d 1269), and to determine Chicos' credibility. Moreover, the trial court could reasonably conclude that Chicos failed to make a sufficient showing that it was impossible for the informant to have access to the apartment and that it was impossible for Torch to have sold narcotic contraband in the early morning of October 30, 1987. Chicos failed to call Rhonda Shue to testify, or submit Rhonda Shue's affidavit, or explain the absence thereof, when by Chicos' own admission Rhonda Shue was at 2344 West Grand the night of October 29 and the day of October 30, 1987. Accordingly, the trial court was entitled to conclude that Chicos did not sufficiently refute the truthfulness of the allegations in the warrant affidavit.

Next, Chicos argues that the trial court erred in allowing her statements that she lived in the apartment and that the contraband was hers into evidence because her constitutional rights were violated under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, when the police continued their interrogation after she exercised her right to remain silent. We disagree. A defendant's rights under *Miranda* are not violated by the admission of volunteered statements, *i.e.*, "[a]ny statement given freely and voluntarily without any compelling influences." (*Miranda v. Arizona* (1966), 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630, cited in *People v. Winchel* (1987), 159 Ill. App. 3d 892, 908, 512 N.E.2d 1298, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.) Volunteered statements may be given even after a defendant has been placed under arrest. (*People v. Lang* (1982), 106 Ill. App. 3d 808, 816, 436 N.E.2d 260.) The determination whether a statement was voluntarily made depends upon the totality of the circumstances, and the test is whether it has been made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant's will was overcome at the time he or she made the statement. (*People v. Britz* (1984), 128 Ill. App. 3d 29, 40, 470 N.E.2d 1059, *aff'd* (1986), 112 Ill. 2d 314, 493 N.E.2d 575; *People v. Winchel* (1987), 159 Ill. App. 3d 892, 908, 512 N.E.2d 1298, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.) The determination should consider these factors: the defendant's age, education, emotional characteristics and experience in criminal matters, the nature of the interrogation, the length of defendant's detention preceding the statement, whether the defendant was deprived of the necessities of life or counsel, and whether defendant's exercise of constitutional rights was restricted by deception. (*People v. Britz* (1984), 128 Ill. App. 3d 29, 40, 470 N.E.2d 1059, *aff'd* (1986), 112 Ill. 2d 314, 493 N.E.2d 575; *People v.*

*Winchel* (1987), 159 Ill. App. 3d 892, 908, 512 N.E.2d 1298, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.) The trial court's determination that Chicos initiated conversation and voluntarily made the statements will not be disturbed because it is not contrary to the manifest weight of the evidence after considering Officer Redman and Lieutenant Maher's testimony during the motion to suppress. Additionally, Chicos has not argued or presented any evidence that her will was overcome, that the statements were coerced, or that she was detained unreasonably long. Furthermore, the State is not required to show either that *Miranda* warnings were administered immediately preceding the statement, or that there was an effective waiver of those rights, because Chicos was already advised of her *Miranda* rights when she reinitiated conversation. (*People v. Winchel* (1987), 159 Ill. App. 3d 892, 911, 512 N.E.2d 1298, *appeal denied* (1987), 117 Ill. 2d 552, 517 N.E.2d 1094.) Therefore, Chicos' statements were admissible.

▆▆▆▆ Finally, Chicos argues that the State failed to prove her guilty beyond a reasonable doubt. We disagree. In order to sustain a conviction for possession of a controlled substance, the State must prove that Chicos knew of the presence of the substance and that the substance was in her immediate and exclusive control. (*People v. Rentsch* (1988), 167 Ill. App. 3d 368, 370, 521 N.E.2d 213.) Possession may be actual or constructive. (*Rentsch*, 167 Ill. App. 3d at 370.) Constructive possession exists without actual personal present dominion over a chattel, but with an intent and capability to maintain control and dominion. (*Rentsch*, 167 Ill. App. 3d at 370.) This court will not reverse a conviction unless "after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, *cert. denied* (1990), ＿＿＿ U.S. ＿＿, 111 L. Ed. 2d 798, 110 S. Ct. 3290, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) We find that a rational trier of fact could have found Chicos guilty of possessing controlled substances when the evidence showed that Chicos had control over the apartment becaus e she possessed a key to the apartment and that Chicos confessed to Detective Redman that she lived in the apartment and that the contraband was hers. Moreover, courts have held that there is an inference of knowledge and possession, which may be sufficient to sustain a conviction for unlawful possession of controlled substances, when controlled substances are found on premises under the control of a defendant. (*People v. Rentsch* (1988), 167 Ill. App. 3d 368, 371, 521 N.E.2d 213.) Accordingly,

the jury's determination that the State proved Chicos guilty of possessing contraband beyond a reasonable doubt will not be overturned. Based on the foregoing, Chicos' conviction is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.