John **BRITZ**, Petitioner–Appellant,

v.

James H. **THIERET**, Warden, Menard Correctional Center, and Roland W. Burris, Attorney General of the State of Illinois,* Respondents–Appellees.

No. 90–3077.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1991.

Decided Aug. 6, 1991.

* Pursuant to Fed.R.App.P. 43(c)(1), Roland W. Burris has been substituted for Neil F. Hartigan.

See also 737 F.Supp. 59.

Charles W. Hoffman (argued), Office of the State Appellate Defender, Chicago, Ill., for petitioner-appellant.

Nathan P. Maddox, Asst. Atty. Gen. (argued), Crim. Appeals Div., Springfield, Ill., for respondents-appellees.

Before BAUER, Chief Judge, and CUDAHY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

In the wee hours of the morning on June 9, 1979, Timothy Meisner pulled into a gas station in Springfield, Illinois. One of the front tires of his van needed air. He got out of the van, walked around front, and went to work on the tire. He popped off the hubcap and was bending down to plug in the air hose, when someone came up behind him. He may never have seen who that stranger was. From point blank range, the stranger fired a single .22 caliber bullet through Meisner's right shoulder, through his right lung and into his heart, killing him on the spot. After riffling through Meisner's billfold and taking his money, the stranger fled.

About five weeks later, the police arrested 19-year-old John Britz and charged him with Meisner's murder. An admitted PCP user, Britz made several, somewhat confused confessions (later recanted) to various youth crisis hotline workers and police officers. Also, Britz's appearance matched the composite sketch the police had put together from witness descriptions. This evidence was not enough, however—at least according to the state's attorney's office, which *nolle prossed* the case.

But Britz did not simply walk away; the police continued to investigate and gather evidence, including a .22 caliber slug taken from Britz's trailer. In September of 1982, Britz again was arrested and charged with Meisner's murder. With more evidence in hand, the state's attorney's office took Britz's case to trial in April of 1983. The jury found Britz guilty of murder, and he was sentenced to 25 years of imprisonment. The Illinois appellate court, however, reversed Britz's conviction and remanded for a new trial due to errors in the voir dire and the erroneous exclusion of some exculpatory evidence. *People v. Britz*, 128 Ill. App.3d 29, 83 Ill.Dec. 639, 470 N.E.2d 1059 (4th Dist.1984). The Illinois Supreme Court affirmed that reversal. *People v. Britz*, 112 Ill.2d 314, 97 Ill.Dec. 768, 493 N.E.2d 575 (1986).

Britz's case went to trial for a second time in May of 1987. This time, the trial court had to declare a mistrial because the jury was unable to reach a verdict. Eight months later, Britz's third trial began. The third time was the charm for the State: Britz was convicted and sentenced to 25 years, and the appellate court affirmed. *See People v. Britz*, 185 Ill.App.3d 191, 133 Ill.Dec. 423, 541 N.E.2d 505 (4th Dist.1989). In so doing, the appellate court rejected, among other arguments, Britz's contention that the trial court had committed reversible error by declining his requests for individual voir dire of each prospective juror outside the presence of the other prospective jurors. *See id.*, 133 Ill.Dec. at 429, 541 N.E.2d at 511. Britz argued, before both the trial court and the appellate court, that

such a voir dire was necessary to determine whether the prospective jurors had been exposed to pretrial publicity that mentioned that Britz previously had been tried and convicted for the same crime. The appellate court rejected Britz's contention: "The record establishes [that Britz] received a trial before a fair and impartial jury, and we, therefore, find no abuse of discretion in the court's voir dire procedure." *Id.* 133 Ill.Dec. at 430, 541 N.E.2d at 512.

Britz petitioned the appellate court for rehearing, which petition was denied. Britz then petitioned the Illinois Supreme Court for leave to appeal, again raising the voir dire argument. That petition, too, was denied. 128 Ill.2d 666, 139 Ill.Dec. 516, 548 N.E.2d 1072 (1989) (Table).

■■■ Figuring that his remedies in the Illinois courts were exhausted, Britz then filed in federal district court a habeas corpus petition pursuant to 28 U.S.C. § 2254. The first issue we must address is whether Britz figured correctly; in other words, did he exhaust his state remedies as required by 28 U.S.C. §§ 2254(b) & (c)? At first blush, it would appear that he did not, as he failed to take advantage of Illinois' post-conviction challenge opportunity. *See* Ill. Rev.Stat.1987, ch. 38, paras. 122–1 *et seq.* As it turns out, however, that failure was not fatal. Britz's claim in the instant federal habeas proceeding is that the voir dire conducted by the trial court violated his sixth amendment right to an impartial jury. Britz raised and argued this same claim on direct appeal; the appellate court rejected it on the merits, and the Illinois Supreme Court denied review. Had Britz filed a post-conviction petition under Illinois law, the Illinois courts would have strictly applied *res judicata* and refused to address his claim, *see People v. Gaines*, 105 Ill.2d 79, 87–88, 85 Ill.Dec. 269, 274, 473 N.E.2d 868, 874 (1984)—that is, unless Britz could have established that "fundamental fairness" required the court not to apply *res judicata* in his case (and there is no reason

to believe that he could have). Thus, the filing of an Illinois post-conviction petition would have been futile. *See Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 1067–68, 103 L.Ed.2d 334 (1989); *Reese v. Peters*, 926 F.2d 668, 671 (7th Cir.1991). The exhaustion requirement for federal habeas review requires petitioners fairly to present the merits of their claims to the state courts; it does not require them to partake of futile gestures. *See Castille v. Peoples*, 489 U.S. 346, 349–51, 109 S.Ct. 1056, 1059–60, 103 L.Ed.2d 380 (1989). *See also Mikel v. Thieret*, 887 F.2d 733, 736 (7th Cir.1989) ("[I]t is usually unnecessary for those persons having taken a direct state court appeal to use [Illinois'] post-conviction remedy to satisfy the federal *habeas* exhaustion requirement.") (citations omitted).[1]

That behind us, we move to the substance of Britz's claim. To fully understand it, some additional background is required. Meisner's murder and Britz's multiple trials for that crime received fairly extensive coverage in the Springfield media. The local newspaper carried (by Britz's count) some 36 articles about the case. Most of the articles after 1983 mentioned that Britz already had been convicted of the crime and that his conviction had been reversed on appeal. In fact, one such article appeared on page 13 of the Springfield paper on January 19, 1988: the first day of jury selection in the third trial. Local radio and television stations also covered the case with some frequency, including a radio report at lunchtime on January 19th. That report, too, mentioned the fact that Britz previously had been convicted of the Meisner murder.

Citing this substantial pretrial publicity, Britz several times asked the trial court to question the prospective jurors concerning their prior knowledge of the case. Specifically, Britz wanted the court first to ask the entire panel whether any of them had heard about the case, and then individually take aside each prospective juror who said

---

**1.** We note that the State has not raised—and therefore has waived—any procedural default arguments. Thus, we will not examine any

such issues. *See United States ex rel. Fleming v. Huch*, 924 F.2d 679, 682 n. 2 (7th Cir.1991).

"yes" to determine whether he or she knew that Britz previously had been convicted of the same crime. It was Britz's position that any prospective juror who had heard of his prior conviction automatically should be excluded for cause. Britz also argued that he needed to know which prospective jurors were aware of his prior conviction in order to exercise his peremptory challenges.

The trial court denied Britz's request to conduct an individual, private voir dire of each juror who had heard of his case. Instead, the court asked each prospective juror, in open court, a series of background questions. In the course of these questions, the court asked each juror whether he or she had heard of the case. If the juror had, the court then asked the juror when and how that exposure took place, whether the juror had discussed the case or news account with anyone, whether the juror had formed an opinion regarding the case, and whether the exposure would affect the juror's ability to decide the case solely on the basis of the evidence presented in court. *See, e.g.,* Transcript of Proceedings on January 19, 1988 ("Trial Tr."), Petitioner–Appellant's Supplemental Appendix B, at 60–63 (voir dire of Daniel Becker).

The trial court so questioned a total of 36 prospective jurors. (The selection of the jury took an entire day.) Six of these jurors were excused before being asked about their prior knowledge of the case. Twenty-seven of the remaining 30 answered that they previously had heard of the case, but only one said that she had formed an opinion because of that exposure. That juror was excused for cause. Twelve of the prospective jurors stated that they had seen or heard the news accounts that aired that very day (January 19, 1988), which accounts mentioned Britz's prior conviction. Britz challenged six of these jurors for cause, but the trial court denied those challenges. Britz used a few of his peremptories to eliminate three of these jurors. The prospective jurors who had never heard of the case at all were excused for other reasons, meaning that all twelve jurors (and two alternates) who ultimately were select-

ed acknowledged some prior familiarity with the case. Six of the twelve had been exposed to the contemporaneous news accounts that included references to Britz's prior conviction. All twelve jurors assured the court that they would decide the case based solely on the evidence presented in court. Britz had two of his seven peremptory challenges remaining after the jury had been selected.

Britz claims that the trial court's failure to determine during the voir dire which prospective jurors were aware of his prior conviction violated his sixth amendment right to an impartial jury in two respects: first, it prevented him from having such jurors automatically excluded for cause; and second, it deprived him of the opportunity to exercise his peremptory challenges in an informed and intelligent manner. The district court rejected both arguments. The court held that the first argument must fail because there is no constitutional rule that jurors who are aware of a defendant's prior conviction for the same crime automatically are excludable for cause. As to the second argument, the court concluded that the trial court's voir dire was sufficient to provide Britz with an adequate basis for the intelligent exercise of his peremptory challenges. We agree.

The sixth amendment guarantees to all criminal defendants (including, through the fourteenth amendment, defendants before state courts, *see Duncan v. Louisiana,* 391 U.S. 145, 147–49, 88 S.Ct. 1444, 1446–47, 20 L.Ed.2d 491 (1968)), the right to "a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI. Extensive pretrial publicity can encroach upon the jury impartiality guaranteed by this clause, particularly when that publicity is so pervasive and inculpating that the entire community from which the jury is to be drawn is convinced of a defendant's guilt before the proceedings begin. *See generally Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). The voir dire of the prospective jurors is one, primary method by which the trial court and the parties can screen out the influence of such publicity and ensure an impartial jury. Should that voir dire reveal that a

prospective juror has become aware through extrajudicial sources that the defendant has a prior criminal record, the established practice in the federal system is that that juror is presumed to be prejudiced and should be excused. Federal courts began utilizing this presumption after the Supreme Court's decision in *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), wherein the Court reversed a conviction because the jurors had been exposed during trial to newspaper articles concerning the defendant's prior conviction and arrest. The Court concluded in *Marshall*, "In the exercise of our supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts, ... we think that a new trial should be granted." *Id.* at 313, 79 S.Ct. at 1173 (citations omitted).

■ The presumption adopted in the federal courts in the wake of *Marshall* has much to recommend it, including the forestallment of the very kind of challenge raised here by Britz. But—and this is well-established—*nothing in the Constitution* compels the trial courts of all fifty states to adopt the presumption, as its promulgation was based on the Court's federal supervisory authority. *Murphy v. Florida*, 421 U.S. 794, 797–99, 95 S.Ct. 2031, 2034–36, 44 L.Ed.2d 589 (1975). *See also Williams v. Griswald*, 743 F.2d 1533, 1537 (11th Cir. 1984); *United States ex rel. Brown v. Smith*, 306 F.2d 596, 603 (2d Cir.1962), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1012, 10 L.Ed.2d 11 (1963). *Cf. Mu'Min v. Virginia*, —— U.S. ——, 111 S.Ct. 1899, 1903–04, 114 L.Ed.2d 493 (1991) ("We enjoy more latitude in setting standards for *voir dire* in federal courts under our supervisory power than we have in interpreting the provisions of the Fourteenth Amendment with respect to *voir dire* in state courts.") Thus, the state trial court's "failure" to employ the presumption—which is the jist of Britz's first argument—is not an "error" cognizable on federal habeas review. To put it another way: even accepting Britz's claim that the state trial court's voir dire failed to ferret out information that, were this a federal trial, would have resulted in automatic exclusion for cause because of the presumption of prejudice, we would not grant his habeas petition, because this "failure" is not constitutionally significant. *See Mu'Min*, 111 S.Ct. at 1905–08 (the Constitution does not require individual voir dire of each prospective juror to determine content of pretrial publicity to which juror was exposed).[2]

Undaunted by *Murphy* and the others, Britz attempts nonetheless to invoke the presumption of prejudice, citing in support one Fifth Circuit case: *United States v. Williams*, 568 F.2d 464 (5th Cir.1978); and three state court cases: *Hughes v. State*, 490 A.2d 1034 (Del.1985); *Barker v. Commonwealth*, 230 Va. 370, 337 S.E.2d 729 (Va.1985); and *Cappadona v. State*, 495 So.2d 1207 (Fla.App.1986). These cases, he argues, stand for the proposition that the automatic exclusion for cause of jurors with prior knowledge that the defendant was convicted previously of the same crime is, in fact, constitutionally mandated.

These baskets cannot hold the eggs placed in them by Britz, particularly after the Supreme Court's opinion in *Mu'Min*. In *Williams*, two jurors were exposed during trial to news reports that the defendant had been convicted in an earlier trial of the same offense. The Fifth Circuit applied what it called "the *Marshall* rule" and

---

**2.** We note that there is some support for the notion that prejudice can be "presumed," regardless of whether the trial took place in federal or state court, when pretrial publicity is so pervasive, inflammatory and widespread that the trial becomes "but a hollow formality," or pre- and mid-trial publicity so invasive that the trial becomes a "media circus." *See Murphy*, 421 U.S. at 798–99, 95 S.Ct. at 2035–36 (discussing *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965);

and *Shepard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)). *See also Mu'Min*, 111 S.Ct. at 1907 (discussing *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); and *Irvin v. Dowd*, 366 U.S. at 723, 81 S.Ct. at 1642–43). We do not take Britz to be raising such a claim, which would, in any event, be unsupported by the evidence in this case. As the district court stated, "Although the case had been reported in the news media, the articles were straightforward factual reports which were neither inflammatory nor flamboyant."

reversed the defendant's conviction, despite the fact that both jurors assured the trial judge that they would disregard the newscast and decide the case solely on the evidence in court. The Fifth Circuit, however, expressly acknowledged in *Williams*—which, unlike this case, was a direct criminal appeal from a federal trial—that the *Marshall* rule is "considerably broader" than the constitutional standard and only is applicable in the federal courts. *See* 568 F.2d at 468–69. Moreover, the Fifth Circuit subsequently has reaffirmed the non-constitutional source of its holding in *Williams*. *See, e.g., Willie v. Maggio*, 737 F.2d 1372, 1381 n. 10 (5th Cir.), *cert. denied*, 469 U.S. 1002, 105 S.Ct. 415, 83 L.Ed.2d 342 (1984). As for the state cases, if the Delaware, Florida, and/or Virginia courts wish to mandate the *Marshall* rule as the practice in their courts, we certainly have no quarrel with that. The relevant question here, however, is whether Illinois must, as a constitutional matter, do the same. Even putting *Mu'Min* to one side, Britz has failed to marshall sufficient constitutional or precedential support to convince us to impose such a rule upon the Illinois criminal justice system. That failure is even more apparent in light of *Mu'Min* and its holding that the Constitution does not require courts to ask on voir dire "questions specifically dealing with the content of what each juror has read [in the press about the case]." 111 S.Ct. at 1908.

Without the presumption of prejudice to give him grounds for automatic excusals for cause, Britz is left with the task of establishing that the prospective jurors were actually prejudiced and should have been excused for that reason. Britz eschews arguing this directly, but attacks instead the scope of the voir dire as insufficient to determine cause or give him adequate information for an informed use of his peremptory challenges. In other words, Britz argues that the trial court conducted only a "superficial and conclusory inquiry" that prevented him both from determining which jurors were actually prejudiced and should have been excused for cause, and from exercising intelligently his peremptory challenges. Britz suggests that a sufficient voir dire would have in-cluded, at least, follow-up questions to each individual juror who had heard of the case to determine whether he or she knew about the jury verdict in the first trial.

■ Again, the Court's holding in *Mu'Min* demonstrates that Britz must fail. As the Court there discussed, trial judges traditionally have been afforded broad discretion in structuring and conducting voir dire. 111 S.Ct. at 1904. That discretion is not boundless, however. A defendant's fourteenth amendment right to due process imposes the limitation that the court must ask sufficient questions during voir dire that "fundamental fairness" is guaranteed. *Id.* at 1905. *See also Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931). More specifically, we have held that a trial court's voir dire must include "sufficient questioning to produce, in light of the factual situation involved in the particular trial, some basis for a reasonably knowledgeable exercise of the right to challenge." *United States v. Price*, 888 F.2d 1206, 1211 (7th Cir.1989) (quotations and citations omitted). *See also United States v. Moore*, 936 F.2d 1508, 1514–15 (7th Cir.1991).

■ These constitutional parameters are quite broad, and the voir dire in this case fell well within them. The trial court asked each juror whether he or she had heard of the case before. If the juror had, the court followed up with questions about when and how the juror had heard about the case, whether the juror had discussed it with anyone, and what effect the prior exposure had. Each juror specifically was asked whether he or she had formed an opinion about the case and whether he or she would be able to base his or her verdict only on the evidence presented in court. None of the jurors who ultimately sat on this case stated that he or she had formed an opinion, and all swore that their verdict would be based solely on the evidence. In sum, the voir dire examination in this case was identical in most respects to the voir dire that the Court found to pass constitutional muster in *Mu'Min*. *Compare* 111 S.Ct. at 1901–03 & 1908. As was the Court in *Mu'Min*, we are confident in this case that the petit jury that was seated was free of any constitutionally significant partiality

caused by the pretrial publicity—at the very least, there was no "manifest error" in the finding by the Illinois courts that the jurors were impartial. *See id.* at 1907; *Grancorvitz v. Franklin,* 890 F.2d 34, 37 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2566, 109 L.Ed.2d 749 (1990).

Particularly in light of its verdict, it is clear that Britz did not get exactly the jury he wanted. Could he do it all over again (for the *fourth* time!), maybe he would exercise all of his peremptory challenges, or use them differently, or move for a change of venue. The purpose of federal habeas corpus review is not, however, to allow convicted petitioners to get another shot because they think they could do it better next time. Rather, state convictions or sentences are disturbed on federal habeas review only when the petitioner establishes some fatal taint caused by a violation of the Constitution or of federal law. Britz has failed to establish any such violation here. Therefore, the district court's judgment denying Britz's petition for a writ of habeas corpus is

AFFIRMED.